## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-873

**STATE OF LOUISIANA**

**VERSUS**

**BLAKE ALLEN SHELL**
**A/K/A BLAKE A. SHELL**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 88403
HONORABLE VERNON B. CLARK, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## MARC T. AMY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**Post Office Box 1747**
**Lake Charles, LA   70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Blake Allen Shell**

**Asa A. Skinner**
**District Attorney**
**Terry W. Lambright**
**First Assistant District Attorney**
**Post Office Box 1188**
**Leesville, LA   71446-1188**
**(337) 239-2008**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**AMY, Judge.**

The State charged the defendant with negligent homicide following an automobile accident that resulted in the death of the passenger. After the defendant entered a no-contest plea to the charge, the trial court sentenced the defendant to four years at hard labor. The trial court further imposed restitution costs to the victim's family. On appeal, the defendant asserts that the imposed sentence is excessive and that the trial court failed to establish a payment plan for the restitution costs. For the following reasons, we affirm.

### Factual and Procedural Background

The State charged the defendant, Blake Allen Shell, with negligent homicide, a violation of La.R.S. 14:32, alleging by bill of information that, on or about February 20, 2015, defendant did kill Abigail Marlene Welch by criminal negligence, in violation of R.S. 14:32[1] (felony)." At the resulting plea hearing, at which the defendant entered a plea of no contest, the State entered the following factual background to the trial court:

> [O]n February the 20th, 2015, that this defendant was operating a motor vehicle and through his criminal negligence, did leave the roadway, flip his vehicle and strike a tree causing his passenger, Abigail Welch, to be ejected from the vehicle. Uh, when troopers arrived on the scene, spoke with this defendant, smelled alcohol on his breath, this court is aware, that because of a death involved, his blood was drawn at the -- at the hospital where it was sent to the Louisiana Crime Lab where it was determined that his blood alcohol content was at .05. Also, his toxicology report showed that there were amphetamines in his blood -- in his urine. Uh, all of these events occurred in Vernon Parish, State of Louisiana.

The trial court subsequently sentenced the defendant to four years at hard labor for the negligent homicide conviction. It also ordered the defendant to pay

---

[1] In pertinent part, La.R.S. 14:32(A)(1) provides that: "Negligent homicide is . . . [t]he killing of a human being by criminal negligence."

$13,374.56 in restitution to the victim's family and to pay $150.00 to the Department of Public Safety for the completion of the pre-sentence investigation report. The trial court ordered that the sentence be served concurrently with a three-month sentence imposed for a conviction of operating a motor vehicle while intoxicated, a violation of La.R.S. 14:98.1.[2]

After the trial court denied the defendant's motion to reconsider sentence, the defendant filed this appeal. He assigned the following as error:

> 1) The sentence imposed by the trial court is excessive, in violation of the Eighth Amendment of the Constitution of the United States and La. Const[.] Art. I, § 20, and is nothing more than the needless infliction of pain and suffering.
>
> 2) The trial court failed to determine a periodic payment plan consistent with the financial ability of Appellant, as permitted by La. Code Crim. P. art. 883.2(D) and as appropriate under the circumstances of this case.

*Errors Patent*

Our review of the record pursuant to La.Code Crim.P. art. 920 reveals no errors patent on the face of the record.

*Excessiveness of the Sentence*

Noting that the four-year sentence imposed by the trial court is in the upper range of that designated by La.R.S. 14:32, the defendant asserts that the sentence imposed is unconstitutionally excessive. *See* U.S. Const. amend. VIII;[3] La.Const. art. 1, § 20.[4] Pointing to various mitigating factors, including his lack of prior criminal history, he suggests, as he did in his motion to reconsider sentence, that a

---

[2] This latter misdemeanor conviction and sentence are beyond the scope of review of this appeal.

[3] United States Constitution Amendment VIII provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

[4] Louisiana Constitution Article 1, § 20 guarantees that "[n]o law shall subject any person to cruel, excessive, or unusual punishment."

probated sentence would permit him to "obtain the medical and mental health treatment he needs to once again becoming a working and contributing member of society." Otherwise, he contends that a low-to-mid-range sentence would be more suitable.

As pertinent to this matter, La.R.S. 14:32(C)(1) provides that, whoever commits the offense of negligent homicide, "shall be imprisoned with or without hard labor for not more than five years, fined not more than five thousand dollars, or both." Thus, the term of imprisonment imposed in this matter fell within the statutory range. However, this court reviews the sentence as it may be excessive under certain circumstances. *See State v. Guzman*, 99-1528 (La. 5/16/00), 769 So.2d 1158. Namely, a sentence will be found excessive when it is determined to be "so grossly disproportionate to the severity of the crime as to shock our sense of justice" or to "make[] no reasonable contribution to acceptable penal goals and therefore, is nothing more than the needless imposition of pain and suffering." *Id.* at 1167.

The supreme court has explained that:

In determining whether the penalty is grossly disproportionate to the severity of the crime, a reviewing court must consider the punishment and the crime in light of the harm to society caused by its commission and decide whether the penalty is so disproportionate to the crime committed as to shock the sense of justice.

The following factors are useful in determining whether a sentence, by its excessive length or severity, is grossly out of proportion to the underlying crime: the nature of the offense and the offender, a comparison of the punishment in this case with the sentences imposed for similar crimes, the legislative purpose behind the punishment, a comparison of the punishment with sentences imposed for similar crimes, and a comparison of the punishment provided for this crime in other jurisdictions.

3

*State v. Fruge*, 14-1172, p. 6 (La. 10/14/15), 179 So.3d 579, 583 (citations omitted). As noted by the defendant, sentences that are "at or near the maximum should ordinarily apply only to the most blameworthy offenders committing the most serious violations of the described offense." *State v. LeBlanc*, 09-1355, p. 10 (La. 7/6/10), 41 So.3d 1168, 1173.

In imposing sentence, the trial court observed that blood testing following the accident revealed that the defendant's blood alcohol level was .05. He further explained that at the time the accident occurred, the defendant was traveling at seventy-five miles per hour (in a thirty-five mile per hour zone), and that he lost control of the vehicle upon an overcorrection of the vehicle. The trial court reported that there was no evidence of braking, and that the vehicle flipped multiple times, "ending up against a tree, pinning Mr. Shell in the vehicle, partially, causing serious injuries to him." Ms. Welch, Mr. Shell's eighteen-year-old passenger and girlfriend, was thrown "out of the vehicle killing her." The trial judge noted that neither was wearing a seat belt.[5]

Thereafter, and upon review of the sentencing guidelines of La.Code Crim.P. art. 894.1, the trial court explained that it found them applicable as follows:

> [T]here was cause -- cause -- harm caused to this family in the loss of their victim. Of course, ultimately, the harm was caused to the 18-year-old girl who lost her life. But the family lost a child and relative and they had to go through the process of funerals, headstones, and things of that kind and the expense that was stipulated to was $13,374.56 so there was economic harm, as well, as a result of this. There are no substantial grounds which would tend to excuse or justify his criminal conduct. He indicated in the P.S.I. that before this accident he did drink beer. Didn't drink it all the time or every day but

---

[5] Although the State filed a bill of information for the offense of operating a motor vehicle with no seat belt, a violation of La.R.S. 32:295.1, it dismissed that misdemeanor charge at the plea hearing.

4

he drank it occasionally and this evening he had had some. He has no prior record, whatsoever, clean as a whistle. Uh, seemed to be a good boy, a good -- a good man. He has a high school education. He had worked previously in construction work. His health is relatively good. He deals -- he still has to suffer some from his injuries, as I understand it, to his ankle and to, uh, his wrist but, as much as anything, he is dealing with the mental issues of what he did as far as causing the death of someone who[m] he loved dearly, apparently. And the statement he gave to the probation officer indicated that he wishes that it was him, rather than her, that was dead and I can certainly understand that. He's single. He wants to get on with his life and wants to try to get over this and deal with it. He has expressed remorse, uh, himself and he has asked his God to forgive him and today he has received the forgiveness of the father of the child or the girl. Now, with the kind of record that he has, he would be an ideal candidate for probation. However, I feel that probation in this case would deprecate or reduce the seriousness of the offense to a degree where I think that, uh, as Mr. Welch feels, that that would be considered more than anything a slap on the wrist and with no real consequences. The -- the real problem here as far as the sentence that's gonna [sic] be imposed is this, we have a result that is permanent and will have to be dealt with by both sides of this case for the rest of their lives. Mr. Shell has to deal with it from the mental state of what he did and he's gonna [sic] need a lot of help with that. However, the family and friends of this girl have lost someone who cannot be replaced, who[m] they can't see, they can't hug, they can't talk to, can't touch. All they have [are] memories and their thoughts and pictures and videos or whatever else they have. They're dealing with a permanent loss here and they, themselves, are gonna [sic] need a lot of help to get through this. Quite frankly, the maximum sentence on this is five years. Not too long ago I think the maximum was quite a bit bigger or larger than this but the Legislature, I think, saw fit to reduce it. I think when I first became a judge that I had this kind of a case and the maximum penalty was 15 years and I gave that gentleman 15 years. The reason I did that was because his record was such that he had multiple D.W.I.'s, multiple chances to stop drinking and quit driving, even that day that this happened in that case and he ignored the pleas of his wife and he went off and, so, he killed someone and I gave him the maximum and on -- on appeal, that was affirmed. But the Legislature has made this maximum five years. Now, the Legislature has also said -- not particularly the Legislature, let me back up. The Supreme Court and the appellate courts, the jurisprudence has also said that, when considering a sentence, the court should know that the maximum penalty is reserved for the most egregious offenders for that particular offense, i.e., the individual I spoke of in the other case who had multiple D.W.I.'s, multiple opportunities to get help, uh, had a record, had a pretty substantial record [of] driving and drinking and not doing anything about it and, finally, he killed someone. And, so, the maximum in that case was

found by the higher courts to be an appropriate sentence but they also noted that this is the kind of case and the kind of offender that the maximum is intended for. In this case, I have a -- a young man, he's 20 now, has all of his future and his life as an adult ahead of him, uh, and has no record whatsoever. So, I -- I'm not going to impose the maximum because I think that if I did, I'd probably risk being reversed because the Court of Appeals [sic] would find that with his clean record and his lack of any kind of behavior of any significance to support that would reverse me. However, at the same time, I believe, that this sentence should send a message to him, should send a message to the victim's family and to his family and to other young people who, for some reasons, think they are invincible, who think they are capable of reacting to any kind of emergency and preventing things from happening. I raised four boys. They've all made it and -- and -- but I lost one of them when he was 20 years old. It was an accident. It was terrible, but I know very well that young people believe that, hey, speed limits are not for me. If I start to lose control, when I'm going 75 miles an hour on a parish road with no shoulders, I'm still gonna [sic] save the car and we're gonna [sic] get back on the road fine and, hey, I can handle it. Let's take a little risk, I can handle it. Oh, by the way, I'm gonna [sic] throw in a little beer on top of that and I can still handle it. But people need to quit thinking that way. They need to start being a little more careful and cautious and understanding that there are results and consequences of their actions. And in this case, the result and consequence is we have a dead girl, we have a young man whose future is perilous and he's in a -- a serious situation now. I have absolutely no idea why someone would be going 75 miles per hour on that road, under those conditions, at that time of the day other than to think that, hey, I'm wild and crazy and let's just zoom off. They don't think very -- very much before they do things like that. And, so, one reason for sentencing someone in this kind of a situation, as I said in that other case, is to send a message to everyone else, young people in particular. I don't care how old you are, if you've got a driver's license and you're driving, you better be cautious and careful in how you operate it and what you do before you operate it because there are consequences and Mr. Shell has to suffer those consequences at this time.

Subsequently, the trial court imposed the four-year, hard labor sentence, as well as restitution. Having reviewed the record, we find no manifest abuse of the trial court's sentencing discretion. *See State v. Smith*, 01-2574, p. 6 (La. 1/14/03), 839 So.2d 1, 4 (instructing that "[a] trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion.").

As noted by both the defendant and the trial court, a variety of mitigating circumstances was present in this matter. The record evidences that the defendant is of a young age, (nineteen years old at the time of the subject offense), has no criminal history, and maintained employment in the construction field prior to the accident. Additionally, he also sustained serious injury from the accident. On this latter point, the defendant's mother explained at the sentencing hearing that he has needed mental health treatment and medication since the accident, is tearful, has difficulty performing at work due to continued problems with his legs and feet, and now spends most of his time at home alone in his bedroom at her home. She explained that he has "stated that he's wanted to die several times."

Reporting on the defendant's background, the trial court explained that the defendant "would be an ideal candidate for probation." Yet, the trial court specifically rejected the defendant's request in that regard, finding that a more significant sentence was required. Specifically, the trial court referenced the loss sustained by the friends and family of the young victim, and the exacting, reckless nature of the underlying offense. The record supports this determination, as the accident occurred while the vehicle was traveling at a speed forty miles per hour over the posted speed limit. Also, and only nineteen years of age at the time of the offense, the defendant was found to have both alcohol and amphetamines in his system in post-accident testing. Both the driver and his passenger were reported to be traveling unrestrained by seat belts. Given the life-altering nature of the offense to all involved, we find no indication that sentence designated by the trial court was grossly disproportionate to the severity of the crime.

Additionally, and while the four-year sentence is in the upper range of that provided for by La.R.S. 14:32, we do not find it to be grossly out of proportion to

the underlying offense upon comparison to sentences imposed for similar offenses. Certainly, the defendant points to a number of cases in which lesser sentences were imposed for convictions of negligent homicide. *See, e.g., State v. Williams*, 458 So.2d 191 (La.App. 5 Cir. 1984) (wherein the fifth circuit affirmed a two-year sentence for a defendant convicted of negligent homicide in the death of a pedestrian; defendant was simultaneously convicted of operating a vehicle while intoxicated due to a blood alcohol level of .18%). *See also State v. Green*, 418 So.2d 609 (La.1982) (wherein the supreme court affirmed concurrent three-year sentences for a defendant convicted of two counts of negligent homicide in the deaths of two teenagers; testing performed subsequent to the offense revealed a blood alcohol level of .14%).

Importantly, however, the cases referenced by the defendant were affirmed at the appellate level. Thus, the trial court in each of those cases specifically chose a lesser sentence. It is unquestioned that the trial court could have done so in this case. Obviously, it found a lengthier sentence more appropriate given the articulated circumstances. We review that sentence only for an abuse of the trial court's sentencing discretion, as "he or she remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784, p. 2 (La. 5/31/96), 674 So.2d 957, 958, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996). Simply, the appellate court does not consider whether another sentence may have been more appropriate. *Id.*

We point out too, that jurisprudence also exists indicating that appellate courts have affirmed upper-range sentences under La.R.S. 14:32. *See, e.g., State v. Rogers*, 07-276 (La.App. 3 Cir. 10/3/07), 966 So.2d 1212 (wherein a panel of this court affirmed a three-and-one-half year sentence for a defendant convicted of

negligent homicide in the death of a passenger; the subject left the scene, leaving the victim's child unattended at a relative's home, and did not report the accident); *State v. Hughes*, 03-420 (La.App. 3 Cir. 12/31/03), 865 So.2d 853 (wherein a panel of this court affirmed a five-year sentence for a negligent homicide conviction in the death of a motorist; the offense occurred when the defendant attempted to commit suicide by driving into oncoming traffic), *writ denied*, 04-0663 (La. 9/24/04), 882 So.2d 1165. Thus, upon comparison to sentences imposed in similar offenses, we find support in the jurisprudence for the sentence shaped by the trial court.

Finally, we find no merit in the defendant's suggestion that the trial court's erroneous belief that the penalty for negligent homicide had been recently amended and that this influenced his decision in arriving at the four-year sentence.[6] While the trial court's reference to an amendment to La.R.S. 14:32 was in error, we find no indication that the trial court intended to impose a more lenient sentence but for that mistaken belief. We have instead found here that the sentence imposed was within the appropriate sentencing guidelines and not excessive upon review. *See State v. Preston*, 47,273 (La.App. 2 Cir. 8/8/12), 103 So.3d 525 (wherein the second circuit affirmed a defendant's sentence as it was within the correct sentencing guidelines, although the trial court incorrectly identified the applicable sentencing guidelines; the second circuit identified no intention of the trial court to impose a more lenient sentence).

---

[6] As set forth above, the trial court erroneously remarked that La.R.S. 14:32 previously allowed for a sentence of up to fifteen years. Yet, La.R.S. 14:32 was amended by 1980 La. Acts No. 708, § 1 to provide for a sentence of up to five years. *See also State v. Masino*, 216 La. 352, 355, 43 So.2d 685, 686 (1949) (wherein the supreme court noted that "Article 32 of the Louisiana Criminal Code relating to 'negligent homicide' under which the prosecution was brought became effective as a law of the State on July 29, 1942 . . . ."; Justice McCaleb, dissenting, explained that the penalty for negligent homicide was imprisonment for not more than five years.)

Accordingly, we find the defendant's assignment of error to be without merit.

*Periodic Payment Plan*

In his final assignment of error, the defendant argues that the trial court failed to determine a periodic payment plan consistent with his financial ability, as permitted by La.Code Crim.P. art. 883.2(D), and as appropriate under the circumstances of this case. In particular, the defendant suggests that he was represented at trial by pro bono counsel, had a limited work history, continued to suffer from physical injuries related to the accident, and was unable to provide for his own recommended medical treatment.

With regard to restitution, La.Code Crim.P. art. 883.2(D) provides: "Notwithstanding any other provision of law to the contrary, if the defendant is found to be indigent and therefore unable to make restitution in full at the time of conviction, the court may order a periodic payment plan consistent with the person's financial ability."

As explained above, the trial court ordered that the defendant pay restitution to Ms. Welch's family in the amount of $13,374.56. Counsel for the defendant made only a general objection following sentencing, however. And, in his motion to reconsider sentence, the defendant asserted that "the amount of monies that the Court order[ed] [him to] pay are grossly excessive, and in essence creates a 'debtor's prison' environment for the defendant and are so excessive as to set him up to fail." It did not include a request for a payment plan.

10

Significantly, La.Code Crim.P. art. 883.2(D) anticipates that, if a defendant is found to be indigent and unable to make full restitution, the trial court "may[7] order a periodic payment plan[.]" However, neither by contemporaneous objection nor by motion to reconsider sentence, did the defendant specifically request that the trial court exercise its discretion in establishing the payment plan permitted by La.Code Crim.P. art. 883.2(D) or note an objection to the fact that it had not. Absent that request placed before it, alerting it to the opportunity to rectify such a purported omission, we do not find that the trial court otherwise abused its discretion in not ordering such a plan. *See, e.g.,* La.Code Crim.P. art. 841;[8] La.Code Crim.P. art. 881.2.[9]

Accordingly, we find no merit in the defendant's final assignment of error.

**DECREE**

For the foregoing reasons, the sentence of the defendant, Blake Allen Shell, is affirmed.

**AFFIRMED.**

---

[7] Louisiana Code of Criminal Procedure Article 5 provides that: "The word 'shall' is mandatory, and the word 'may' is permissive."

[8] Louisiana Code of Criminal Procedure Article 841(A) provides that:

An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

[9] Louisiana Code of Criminal Procedure Article 881.2, entitled "Review of sentence[,]" provides that: "The defendant may appeal or seek review of a sentence based on any ground asserted in a motion to reconsider sentence."