# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-752

**STATE OF LOUISIANA**

**VERSUS**

**MORGAN E. DOUGLAS**

**********

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR-2021-670
HONORABLE C. KERRY ANDERSON, DISTRICT JUDGE

**********

## GARY J. ORTEGO
## JUDGE

**********

Court composed of Elizabeth A. Pickett, Chief Judge, Sharon Darville Wilson, and Gary J. Ortego, Judges.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED, IN PART, AND VACATED, IN PART, CASE REMANDED, WITH INSTRUCTIONS.**

**Paula Corley Marx**
**Louisiana Appellate Project**
**P. O. Box 82389**
**Lafayette, LA 70598-2389**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Morgan E. Douglas**

**Hon. James R. Lestage**
**District Attorney**
**Thirty-sixth Judicial District Court**
**P. O. Box 99**
**DeRidder, LA 70634**
**(337) 463-5578**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**ORTEGO, Judge.**

On June 9, 2021, Defendant, Morgan E. Douglas, was charged by bill of information with one count of aggravated arson, a violation of La.R.S. 14:51, and one count of obstruction of justice, a violation of La.R.S. 14:130.1(A)(1), (A)(4), and (B)(1). On August 17, 2022, Defendant pled guilty to one count of obstruction of justice, and the State dismissed the remaining count of aggravated arson. As part of the plea agreement, the State agreed to a twenty-year cap on Defendant's sentence. Following the sentencing hearing on September 2, 2022, the trial court sentenced Defendant to twenty years at hard labor, and further ordered Defendant to pay $25,000.00 in restitution to the victim's two minor children, with the restitution to be paid while Defendant was on parole. On September 2, 2022 Defendant filed a Motion to Reconsider Sentence, which was denied by the trial court.

On September 15, 2022, Defendant filed a motion for appeal, which was granted by the trial court. Defendant is now before this court alleging one assignment of error:

1) that the trial court abused its discretion in imposition of restitution.

For the reasons discussed below, we affirm Defendant's conviction, affirm Defendant's sentence, in part, vacate Defendant's sentence, in part, and remand this case for a full restitution hearing.

## FACTS

Since this case was resolved by Defendant's voluntary plea of guilty, the facts in this record were not fully developed. However, the record shows that, at the sentencing hearing, Detective Jeremy Swisher testified that on November 20, 2020, he responded to a call regarding a vehicle fire at a dead-end road in the DeQuincy, Louisiana, area. A body found in the vehicle was identified through DNA analysis as Lexi Doga, but her cause of death could not be determined due to the severity of

the burns she sustained. The autopsy report indicated Ms. Doga had 9,700 ng per milliliter of meth in her body. Detective Swisher testified and agreed with the autopsy report that indicated the level of meth in Ms. Doga's body could have been a lethal dose. The detective read the following from the autopsy report:

> "Methamphetamine levels are extremely high, and an overdose is possible cause of death, however, extensive charring precludes identification of potential lethal injuries including strangulation, or head injuries. The body may have been burned to cover-up an overdose, but a cover-up of a potential homicide cannot be ruled out. Likely the decedent took the methamphetamine on her own making an accidental overdose possible, but other possibilities remain. Due to the uncertainties caused by extensive burning of the body, the best cause of death, and manner of death, may be undetermined."

During the investigation, via traffic cameras and license plate readers, the police learned that Dixon Fife was driving a red truck, which was seen driving in front of the vehicle in which Ms. Doga was found. Law enforcement contacted Fife on November 21, 2020, within twenty-four to thirty-six hours of Ms. Doga being found. Fife told police that he, Defendant, and another co-defendant, Roberts, contacted Ms. Doga to take drugs and have sex. After they had all taken meth, Roberts had sex with the Ms. Doga, and then Defendant went into the room with Ms. Doga. Fife told police that he could see Ms. Doga on the bed when Defendant stepped out of the room and that he could tell Ms. Doga was fine. When Fife went back into the room about an hour later, Ms. Doga was on the floor and appeared to be dead.

Fife told police that he took a Seroquel and passed out. When he awoke, Fife asserted that Ms. Doga appeared to have been wiped down and dressed in her clothes. Fife assisted in putting Ms. Doga in the passenger seat of her vehicle. Since Defendant and Roberts were from out of state working in hurricane-damage repair, Fife stated that he was the only one familiar with the area. Fife and Roberts drove

in Fife's red pickup truck while Defendant drove the vehicle containing Ms. Doga's body. Fife and Roberts drove to Gillis Grocery to purchase a gas can and gas. All three then drove to Alston Cemetery Road and torched the car containing Ms. Doga's body. According to Fife, they believed Ms. Doga was already dead.

The State Fire Marshal's Office and the Calcasieu Parish Sheriff's Office conducted a search warrant at the residence where the activity had occurred. Defendant and Roberts were located at the residence and were arrested. Detective Swisher iterated that the co-defendants, Defendant and Roberts, were charged with aggravated arson and obstruction of justice in Beauregard Parish and faced similar charges in Calcasieu Parish. As far as the detective knew, no one was being prosecuted for Ms. Doga's murder.

Detective Swisher testified that Fife and Ms. Doga messaged each other about taking drugs and having sex, stating:

> Messages between Dixon Fife and Ms. Doga basically state that Ms. Doga was short on money for the quality of illegal substance that she was going to be provided. Fife suggested she could pay a portion in cash and perform sexual acts on his boss, Roberts, in exchange.
>
> Fife then suggested Ms. Doga let Fife and Roberts have group sex with her, and quoting, "We will supply plenty of dope."
>
> . . . .
>
> "All the dope you can do? We gone [sic] see just how freaky you can be."

On cross-examination, Detective Swisher testified that the forensic pathology report stated Ms. Doga tested negative for carbon monoxide. The detective agreed that some carbon monoxide should have been detected if Ms. Doga was alive when placed in the vehicle. When asked if it was clear that Ms. Doga was dead when the car was burned, the detective responded, "I would say, at that point, yes, sir."

3

The trial court questioned the detective regarding the Department of Public Safety and Corrections Incident Investigations Report. The detective testified that according to the report, Defendant told police that he went to sleep early that night and was not aware of any visitors or any incidents. Additionally, Detective Swisher testified that Fife initially told police that when he found Ms. Doga on the floor, there were "marks around her neck" and that Fife had stated, "I believe like she had been choked." Detective Swisher further testified that according to "Mr. Fife and Mr. Roberts, [Defendant] was the last one to be around Ms. Doga when she was alive [.]"

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find that there are errors patent involving the trial court's restitution order. However, these errors patent are argued under the assigned error. As such, we will address same there.

## ASSIGNMENT OF ERROR

In his sole assignment of error, Defendant contends the trial court erred in ordering restitution be paid to Ms. Doga's minor children, through the court appointed curator. Before discussing the merits of this assignment, we will discuss the arguments set forth in the State's response brief regarding whether Defendant can properly raise this assignment of error.

*Appeal of Defendant's Ordered Restitution*

The State contends Defendant's claims under this assigned error are not reviewable for several reasons. First, the State contends that Defendant expressly waived his right to appeal when he entered into his plea agreement. Second, the State asserts that Defendant is precluded from seeking review of a sentence imposed

4

in conformity with a plea agreement. According to the State, none of the issues raised in Defendant's appeal are "errors patent," thus, none are reviewable as part of this court's error patent review. Finally, the State asserts that Defendant is precluded from making an argument on appeal that was not set forth in his Motion to Reconsider Sentence.

At the guilty plea proceeding, the State set forth the plea agreement as follows:

> Your Honor, on behalf of the State, Richard Morton. It's my understanding we're here today and we have a plea proposal for the Court whereby Mr. Douglas, with his attorney, would be pleading guilty straight-up, so to speak, as to Count 2, Obstruction of Justice pertaining to a second-degree murder investigation as set forth in the bill of information. Actually, the amended bill of information filed herein.

> If that plea is made and accepted, we have several agreements. One, that we would dismiss the aggravated charge, which is Aggravated Arson in a Crime of Violence.

> Obstruction of Justice is not a crime of violence; it's not an aggravated charge as the count is - - customarily is said. So he is pleading guilty straight-up to Count 2, Obstruction.

> We have agreed to a 20-year cap and to have a sentencing hearing and let the Court [to] decide the sentence, anywhere between the minimum and the maximum of 20 years. So the minimum would be zero and the max would be 20 under this plea agreement.

> We've also agreed the State would waive any filing or any habitual offender proceeding, if it was applicable. I'm not sure if it would be applicable. I'm not sure Mr. Douglas has any prior felony convictions that would be in play for habitual offender law.

> He would have to pay whatever fees to the public defender office, as ordered by the Court. Mr. Douglas would also be waiving all rights to appeal, post-conviction relief and federal habeas corpus to the fullest extent allowed by law, and he would also agree to testify truthfully as to all related cases, including his own matter.

> The intent is to have a sentencing hearing. We already have one set for Friday this week involving the two codefendants, Dixon Fife and Michael Roberts, and I'm hoping we can also add Mr. Douglas to that hearing proceeding [sic] this Friday and have the sentencing hearing.

It's my understanding the Court will then take the matter under advisement, review the records and information received at the sentencing hearing, and then set a date later for the actual imposition of sentence.

Defense counsel agreed with the State's recitation of the plea agreement. When the trial court questioned Defendant regarding the plea agreement, the trial court stated the following about the waiver of appeal rights, to wit:

And normally if you were to go to trial and at the end of the trial you didn't like the way it turned out, you would have the right to take an appeal of the case or take an application for post-conviction relief or to apply for what's called "habeas corpus relief" in state or federal court.

But it's my understanding that as part of the plea agreement in this matter, to the extent allowed by law, you are waiving those appeal, post-conviction and habeas corpus rights.

Defendant's written plea agreement states the parties agreed to a twenty-year sentencing cap. As for Defendant's waiver of appeal rights, the written agreement states:

DEFENDANT MUST WAIVE ALL RIGHTS TO APPEAL, POST-CONVICTION RELIEF, AND FEDERAL HABEAS CORPUS PROCEEDINGS, TO THE FULLEST EXTENT ALLOWED BY LAW. IF THIS PROVISION IS DEEMED UNLAWFUL, THEN THIS PROVISION SHALL BE NULL AND VOID AND THE REMAINDER OF THE PLEA AGREEMENT SHALL REMAIN IN FULL FORCE AND EFFECT.

Regarding restitution, and even though the written plea agreement is silent as to restitution, the trial judge ordered Defendant to pay $25,000.00 in restitution to Ms. Doga's minor children over his parole period. After imposing sentence, the trial court did not inform Defendant as to his right to appeal or the time limitations for an appeal. As for his post-conviction rights, the trial court stated:

You are further advised that pursuant to Code of Criminal Procedure Article 930.8, you have to file for application for post-conviction relief within two years after the judgment of conviction and sentence becomes final, or under the application provisions of law the

6

right to do so is lost to you. To the largest extent allowed by law, you've waived those post-conviction rights as part of the plea agreement in this matter, but to the extent that you cannot waive them, you still have the two-year window.

"[A]ppeals are favored[,] and there is a constitutional right in Louisiana to an appeal. *State v. Simmons,* 390 So.2d 504 (La.1980)." *State v. Adger*, 35,414, p. 5 (La.App. 2 Cir. 12/5/01), 803 So.2d 304, 308*, writ denied*, 03-2458 (La. 10/1/04), 883 So.2d 997. Louisiana Code of Criminal Procedure Article 881.2(A)(2) states: "The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." This court has consistently held that it is "not automatically precluded from reviewing a sentence *unless* the plea agreement provides a specific sentence or sentencing cap." *State v. Curtis*, 04-111, p. 2 (La.App. 3 Cir. 8/4/04), 880 So.2d 112, 114 (emphasis added) (citing *State v. Pickens*, 98-1443 (La.App. 3 Cir. 4/28/99), 741 So.2d 696, *writ denied*, 99-1577 (La. 11/5/99), 751 So.2d 232, *and writ denied*, 01-2178 (La. 4/19/02), 813 So.2d 1081), *writ denied*, 04-2277 (La. 1/28/05), 893 So.2d 71. In *State v. Desadier*, 47,991, p. 4 (La.App. 2 Cir. 4/10/13), 113 So.3d 1193, 1195 (citations omitted), the second circuit likewise stated, "Where a specific sentence or sentencing cap has been agreed upon as a consequence of a plea bargain, . . . a sentence imposed within the agreed range cannot be appealed as excessive."

As demonstrated by the jurisprudence, La.Code Crim.P. art. 881.2(A)(2) applies to both specific sentences and sentencing caps. In the present case, the plea agreement, which was set forth in the record at the time of the plea, resulted in a sentencing cap of twenty years. Although Defendant was sentenced in conformity with the agreed upon sentencing cap, the restitution ordered by the trial court was

not part of the plea agreement. Thus, La.Code Crim.P. art. 881.2(A)(2) does not preclude Defendant from seeking review of the trial court's restitution order on appeal.

Consequently, we must decide whether Defendant otherwise waived his right to appeal any part of the trial court's imposition of restitution. Specifically, this court must decide whether in the plea form and/or the guilty plea proceeding, Defendant explicitly waived his right to appeal.

In *State v. Miller*, 12-1401 (La.App. 3 Cir. 6/5/13), 114 So.3d 670, the defendant appealed claiming his sentence was excessive. The State argued that the defendant was precluded from appealing his sentence because he waived his right to appeal all non-jurisdictional errors when he entered into an open-ended plea agreement. The defendant argued his appeal was not precluded because he pled open-ended. Although not noted in the opinion, the plea form in *Miller* stated that "I realize that by pleading guilty I stand convicted of the crime(s) charged . . . and waive . . . any right to appeal from the decision of the court." In *Miller*, 114 So.3d at 670, at 673, this court stated:

> Finally, in *State v. Cosey*, an unpublished opinion bearing docket number 11-774 (La.App. 3 Cir. 2/1/12) 2012WL280632, this court noted that "when a defendant pleads guilty pursuant to a plea bargain, jurisprudence traditionally holds that he is waiving only the right to appeal *his conviction.*" *Id.* at p. 5.

This court concluded in *Miller* that the defendant was not precluded from appealing his sentence.

In *State v. Pickens*, 98-1443, p. 8 (La.App. 3 Cir. 4/28/99), 741 So.2d 696, 702, *writ denied*, 99-1577 (La. 11/5/99), 751 So.2d 232, *and writ denied*, 01-2178 (La. 4/19/02), 813 So.2d 1081, this court acknowledged that "when a defendant pleads guilty pursuant to a plea bargain…he is only waiving his right to appeal *his conviction.*"

8

In *State v. Colar*, 04-1003 (La.App. 3 Cir. 2/2/05), 893 So.2d 152, the defendant, on appeal, asserted his sentence was excessive. The State argued the defendant was not entitled to appeal his sentence because it was imposed in conformity with a plea agreement. The State relied on *Pickens,*741 So2 696. In response to the State's reliance on *Pickens*, this court stated:

> This argument is incorrect. In an *en banc* opinion in *State v. Pickens,* 98-1443 (La.App. 3 Cir. 4/28/99), 741 So.2d 696, *writ denied,* 99-1577 (La.11/5/99), 751 So.2d 232, *writ denied,* 01-2178 (La.4/19/02), 813 So.2d 1081, this Court held that "review is required in open-ended pleas as here, because appeals are favored and there is a constitutional right in Louisiana to an appeal. *State v. Simmons,* 390 So.2d 504 (La.1980)." *Id* at 702. This Defendant entered into an open-ended plea; therefore, he is entitled to appellate review of his sentences. Additionally, any assertion that Defendant waived his appeal when he entered into the plea agreement is also incorrect. In *Pickens,* 741 So.2d at 701, this court explained waiver of the right to appeal as follows:
>
>> A defendant may waive his right to appeal, either expressly or impliedly, but that waiver must be knowing and voluntary. An implied waiver occurs when a defendant is told of his right to appeal by a trial court, but he chooses not to take the appeal within the time limits prescribed by law. It is express if a defendant is told that he has the right to appeal and he says in court, "I waive my right to appeal."
>
> In addition, when a defendant pleads guilty pursuant to a plea bargain, jurisprudence traditionally holds that he is waiving only the right to appeal his conviction. *State v. Wilburn,* 591 So.2d 1255, 1256 (La.App. 3 Cir. 12/18/91), *writ denied,* 613 So.2d 970 (La.1993); *State v. Lawson,* 95-1604, (La.App. 1 Cir. 12/20/96), 684 So.2d 1150, *writ denied,* 97-191(La.6/13/97); 695 So.2d 986.
>
> At the time Defendant in the case *sub judice* pled guilty, the trial court informed him of the following regarding his right to appeal: "And if you plead guilty, you can't appeal; because if you plead guilty, you can't appeal your guilty plea to the appellate court. So do you understand that if you plead guilty, you give up these rights I have explained to you?" *The court was silent on the issue of the appeal of his sentence. Defendant did not specifically waive his right to appeal his sentences.*

*Id.* at 155 (emphasis added).

In the instant case, the transcript and the waiver of rights form are silent as to the waiver of the right to appeal Defendant's sentence. Considering the above, we find Defendant waived the right to appeal his *conviction* only. Consequently, the waiver did not preclude Defendant from appealing the trial court's restitution order.

Finally, the State argues Defendant waived his right to raise any issue regarding restitution since he failed to object at the sentencing hearing and failed to assert any claim regarding restitution in his motion to reconsider sentence. La.Code Crim.P. art. 881.1(E), *State v. Arndt*, 10-257 (La.App. 3 Cir. 10/6/10) (unpublished opinion); and *State v. Mealancon*, 21-119 (La.App. 4 Cir. 12/22/21), 334 So.3d 792, *writ denied*, 22-14 (La. 2/22/22), 333 So.3d 445. Defendant's motion to reconsider asked the trial court to reduce Defendant's sentence and place Defendant on probation noting that he was twenty-four years old with no criminal record and that he is entitled to prove to the trial court that his actions do not reflect his true personality. Further, Defendant's motion asserted that if placed on supervised probation, Defendant would abide by all conditions set forth by his probation officer and seek gainful employment. While it is true that Defendant failed to mention restitution in his oral objection at sentencing and in his written motion to reconsider, we note, however, that in *State v. Ross*, 18-453 (La.App. 3 Cir. 3/13/19), 269 So.3d 1052, *writ denied*, 19-581 (La. 1/22/20), 291 So.3d 1041, this court addressed Ross's claim that the trial court's order of restitution was not supported by the record despite the fact that Ross's sole objection to the sentence imposed was a motion to reconsider sentence that asserted a general excessiveness claim. As such, while Defendant is precluded from appealing his conviction, we find that he is allowed to have this court review his sentence, namely the trial court's ordered restitution.

10

*Trial Court's Ordered Restitution*

At the sentencing proceeding, the trial court noted that all three co-defendants were originally arrested in Calcasieu Parish for the second-degree murder of Ms. Doga, an offense that carries a mandatory life sentence. Thus, the trial court noted that the applicable penalty provision for obstruction of justice is section (B)(1), which provides for a fine of up to $100,000.00 and/or imprisonment at hard labor for not more than forty years. Pursuant to a plea agreement, the trial court noted that the State agreed to a sentencing cap of twenty years at hard labor. In preparation for sentencing, the trial court stated that it reviewed the entire suit records for all co-defendants, including all discovery provided by the State, the victim impact statements, letters from relatives and friends of the defendants, the evidence introduced at the sentencing hearing, and all of the factors listed in La.Code Crim. P. art. 894.1.

In its very detailed reasons for the sentence imposed, the trial court noted the extremely heinous nature of the offense. The court also noted that even though Ms. Doga appeared to be at least a partially willing participant in drug use, the defendants took advantage of her vulnerability. As for the violent nature of the offense, the court noted that there was "certainly violence committed in the obstruction-of-justice claim in such a heinous manner in destroying the body of [Ms. Doga] in this matter."

Additionally, the trial court specifically noted that there was extensive testimony at the sentencing hearing regarding the effects this has had on Ms. Doga's family. In discussing the significant permanent injury or significant economic loss to Ms. Doga or her family, the trial court stated:

> Certainly, you deprived [Ms. Doga's] family of appropriate burial and grieving process. You created a significant economic loss on these two young children, now ages 7 and 4 of [Ms. Doga,] by taking away one of their parents and the wage-earning ability of that parent for the rest of those children's lives.

11

As another aggravating factor, the trial court noted that none of the three defendants attempted to administer CPR or lifesaving measures, nor did any of them call 911, an ambulance, a hospital, or law enforcement. The trial court noted that the defendants "did nothing but immediately try to cover up their actions and crimes."

The trial court summarized the aggravating factors as follows:

> Certainly, the aggravating factors in this matter is [sic] that the defendants facilitated this set of events, knew of [Ms. Doga's] vulnerability to substance abuse, actively sought out . . . [Ms. Doga] and provided [her] with those drugs, which may well have been the cause of her death. We'll never know for sure what was the cause of death in this matter.

When discussing the mitigating factors, the trial court noted that although Defendant has no known criminal history, that he was the last person to see Ms. Doga alive. The trial court further stated:

> [F]rom the evidence presented, [Ms. Doga] was discovered with marks around her neck, with her hands folded across her chest near her neck, and appearing as if she had been choked.

> Whether or not Mr. Douglas committed some crime that actually led to the death or murder of Ms. Doga, we will never know, but certainly that's a factor to be considered in offsetting Mr. Douglas' otherwise lack of a criminal history in this matter.

After citing jurisprudential authority for the term of imprisonment it would impose, the trial court sentenced the defendants as follows:

> Considering all of those individual factors for each of the defendants separately, the Court will sentence each of the defendants to serve 20 years at hard labor with the Department of Corrections. I'm also ordering not a fine, but victim restitution by each defendant in the amount of $25,000.00 to be payable over time on parole in trust for the benefit of the minor children of [Ms. Doga] in this matter, with the grandmother, Jamie Doga Cooley, as the trustee of that victim restitution amount.

> Whether or not that's actually ever paid under the current criminal statutes of Louisiana, I do not know, but it would provide some form of justice to the [Ms. Doga's] family in this matter.

First, Defendant correctly asserts that restitution cannot be imposed as a condition of parole. It is well settled that the trial court lacks authority to impose conditions of parole. *State v. Franco*, 08-1071 (La.App. 3 Cir. 4/1/09), 8 So.3d 790, *writ denied*, 09-1439 (La. 2/12/10), 27 So.3d 843; *State v. Kotrla*, 08-364 (La.App. 3 Cir. 11/5/08), 996 So.2d 1224. In this case, the trial court ordered restitution to be paid "over time on parole. We find it clear that the trial court did not impose restitution as a *condition* of parole. Thus, this assertion is misguided.

Defendant next argues that there was no evidence of an actual pecuniary loss to anyone that can be considered a "victim" in this case. Defendant acknowledged that Ms. Doga's mother, Jamie Cooley, testified that she spent about $30,000 securing custody of and visitation rights for Ms. Doga's two children. However, Defendant asserts this claim is unsupported and "highly attenuated from the crime of conviction." Here, the "victims" who were awarded restitution in this case were Ms. Doga's minor children, not her mother. Thus, this argument by Defendant has no bearing on this issue.

Next, Defendant questions whether Ms. Doga's minor children can be considered "victims" for the purposes of restitution. To make this determination, it is necessary to determine who, if anyone, could be considered the victim of the offense to which Defendant pled, namely obstruction of justice. Defendant argues in brief, the following:

> Morgan Douglas pled guilty to obstruction of justice in that he, along with two others, placed Ms. Doga's body in a car and set the car on fire, burning the body inside. There is no proof that the decedent, Ms. Doga, was a victim of murder. The cause and manner of death were listed as "Undetermined" by the coroner. Tragically, Ms. Doga may have died of an accidental drug overdose. Extremely high levels of methamphetamine (9700 ng/mL) were found in Ms. Doga's blood during autopsy.

Defendant pled guilty to obstruction of justice, which was charged in the bill of information as follows:

> On or about November 20, 2020, MORGAN E. DOUGLAS did willfully and unlawfully violation R.S. 14:130.1(A)(1), (A)(4), and (B)(1), Obstruction of Justice, by tampering with evidence and/or attempting to persuade another to testify falsely with the specific intent to distort the results of a criminal investigation pertaining to the Second Degree Murder of Lexi Brook Doga, (a felony).

While obstruction of justice can be a victimless crime, here, Ms. Doga *was* the victim in the second-degree murder investigation obstructed by Defendant. Further, because of Defendant's actions to obstruct the second-degree murder investigation, the cause of Ms. Doga's death could not be determined. Thus, we find that, as the victim of the second-degree murder under investigation, Ms. Doga can clearly be considered the victim of the obstruction of justice offense related to such investigation.

Having found that Ms. Doga can be considered the victim of the obstruction of justice offense committed by Defendant, the next question is whether her minor children can be granted restitution. Louisiana Code of Criminal Procedure Article 883.2 provides, in pertinent part:

> A. In all cases in which the court finds an actual pecuniary loss to a victim, or in any case where the court finds that costs have been incurred by the victim in connection with a criminal prosecution, the trial court shall order the defendant to provide restitution to the victim as a part of any sentence that the court shall impose.

In *State v. Shell*, 16-873 (La.App. 3 Cir. 4/12/17), 216 So.3d 853, the trial court awarded restitution to the *family* of a victim of negligent homicide. The restitution was imposed pursuant to La.Code Crim.P. art. 883.2. Therefore, in this matter, a statutory and jurisprudential basis exists for Ms. Doga's minor children to be considered victims for the purposes of restitution.

14

Moreover, additional statutory authority for finding that Ms. Doga's minor children are victims for the purposes of restitution exists in La.R.S. 46:1844(M). That provision states, in pertinent part, states (emphasis added):

M. Victims' right to seek restitution.

(1) If the defendant is found guilty, the court or committee on parole shall require the defendant to pay restitution to the *appropriate party* in an amount and manner determined by the court.

For purposes of La.R.S. 46:1844(M)(1), a victim is defined as (emphasis added):

(15) "Victim" means a person against whom any of the following offenses have been committed:

(a) Any homicide, or any felony offense defined or enumerated in R.S. 14:2(B).

(b) Any sex offense or human trafficking-related offense as defined or enumerated in R.S. 46:1844(W).

(c) The offenses of vehicular negligent injuring (R.S. 14:39.1) and first degree vehicular negligent injuring (R.S. 14:39.2).

(d) Any offense against the person as defined in R.S. 14:29 through 63.3.

(e) Any offense committed against a family or household member as defined in R.S. 46:2132 or dating partner as defined in R.S. 46:2151.

(f) The offense of violation of protective orders (R.S. 14:79).

(g) The offenses of voyeurism (R.S. 14:283.1), Peeping Tom (R.S. 14:284), and unlawful communications (R.S. 14:285).

(h) *Any other offense which is a felony committed against any natural person.*

La.R.S. 46:1842 (emphasis added).

Here, La.R.S. 46:1842(15)(h) applies to this case as obstruction of justice is a felony, and that felony was committed against a natural person, Ms. Doga. In *State v. Karam*, 02-163, (La.App. 3 Cir. 7/31/02), 834 So.2d 1003, the trial court ordered Karam to pay counseling costs to the *victims' families* as part of his sentences for

three counts of first-degree murder. On appeal, Karam claimed the trial court erred in failing to specify the amount of restitution. Finding merit to Karam's argument, this court vacated the sentences and remanded for resentencing and the imposition of restitution in accordance with La.R.S. 46:1844(M)(1).

Given the above, we find that Ms. Doga's minor children are proper victims for purposes of being awarded restitution pursuant to La.Code Crim.P. Art. 883.2; *Shell*, 216 So.3d 853; La.R.S. 46:1842(15)(h); *Karam*, 834 So.2d 1003.

Next, Defendant argues that even if Ms. Doga's minor children can be considered victims for purposes of restitution, the trial court erred in failing to determine the actual pecuniary loss suffered by the minor children. Defendant argues the following:

> The court speculated that restitution in the amount of $25,000 was owed by Morgan Douglas to the minor children of Ms. Doga in this matter. But no evidence of actual pecuniary loss to a victim was established as required by La.Code Crim.P. art. 883.2. Restitution is for reparation and is not punitive in nature. Restitution does not cover emotional loss.

We note that the loss of support from a wage-earning parent is considered a pecuniary loss. In *Johnson v. CLD, Inc.*, 50,094, p. 12 (La.App. 2 Cir. 9/30/15), 179 So.3d 695, 703 (emphasis added), the second circuit, in the context of loss of consortium, iterated:

> These elements of damages include such *pecuniary elements as loss of material services and support* and such nonpecuniary components as loss of love, companionship, affection, aid and assistance, society, sexual relations, comfort, solace, and felicity.

In *Young v. Ford Motor Co., Inc.* 595 So2d 1123, 1128, fn. 7 (La.1992) the Louisiana Supreme Court states:

> ""Pecuniary" is defined is Webster's as:  1: consisting of or measured in money and 2: of or relating to money."  Webster's Eighth New Collegiate Dictionary 837 (1979)."

16

However, despite our affirmation of the trial court's ordering Defendant to pay restitution to Ms. Doga's minor children, we find that the record is insufficient to support the amount of the trial court's restitution award. Although the trial court mentioned the economic hardship suffered by the minor children, because of the loss of a wage-earning parent, no specific evidence was introduced as to the children's actual pecuniary loss. In *State v. Smith*, 53,827 (La.App. 2 Cir. 3/3/21), 315 So.3d 407, the second circuit found a restitution award was not supported by the record. Smith was convicted of two counts of attempted second degree murder, aggravated battery, second degree robbery, carjacking, aggravated criminal damage to property, and armed robbery. Smith was ordered to pay $25,000 in restitution in connection with the criminal damage to property charge. Finding the restitution award was not supported by the record, the *Smith* court stated:

> In the present matter, we find that while the damages may well exceed $25,000, such a restitution order is speculative without specific information regarding the damage to the Urban vehicle and home or medical expenses and is therefore not supported by the evidence in the record as it currently exists. The record does not reflect receipts for the repair of the Urban home or vehicle due to damage from Smith's actions or evidence of their medical expenses, and without such, this court is unfortunately in no position to determine whether such restitution is appropriate under the circumstances.

*Smith*, 315 So.3d at 422.

In *State v. Perry*, 15-510, p. 1 (La. 2/5/16), 183 So.3d 509, 509, the supreme court stated the following:

> **Writ granted.** The order of the court of appeal is reversed and the trial court's ruling awarding restitution to the victim is reinstated. Defendant pleaded guilty as charged to theft over $1,500 pursuant to a plea agreement, according to which he agreed to pay restitution in an amount to be determined by the court after a hearing. Restitution cannot always be determined with exactitude, and a trial court therefore has great discretion in setting the amount, as long as the trial court complies with La.C.Cr.P. art. 883.2. Here, the state presented witnesses at the hearing to establish the extent of the losses incurred as a result of defendant's theft, and a review of that testimony indicates that the trial

court did not abuse its discretion in finding "actual pecuniary loss" and fixing the amount of restitution due.

Since the record in the present case does not contain the type of evidence discussed in *Smith, Id.,* and *Perry*, *Id.*, we find the record is insufficient to support the amount set in the trial court's restitution order. In *Smith*, 315 So.3d 407, at 422, the second circuit "remanded for resentencing so that the trial court may undertake the prescribed steps to determine and substantiate the amount of restitution awarded."

In *State v. Joseph*, 05-186 (La.App. 3 Cir. 11/2/05), 916 So.2d 378, this court discussed remanding a case for a restitution hearing stating:

> In Assignment of Error number 3, the defendant argues that when the case is remanded for resentencing, a hearing should be held, during which the parties should be given an opportunity to present evidence concerning the amount of restitution owed. The record does not indicate that a restitution hearing has been held. In *State v. Sandifer,* 359 So.2d 990 (La.1978), the supreme court remanded the case for a restitution hearing when one of the defendants contested the amount of restitution awarded. The Louisiana Supreme Court noted:
>
> > The record is silent as to the trial judge's reasons for ordering restitution far in excess of the value of the merchandise . . . . [H]ence, in affirming the sentence, we will vacate that condition of probation and *instruct the trial judge to conduct a hearing to afford the defendant an opportunity to demonstrate that the amount of restitution is excessive* and to fix the amount of restitution in the light of the showing made.

*Id.* at 992-93 (emphasis added).

In *State v. Spell,* 449 So.2d 524 (La.App. 1 Cir.), *appeal after remand,* 461 So.2d 654 (La.App. 1 Cir.1984), the first circuit followed *Sandifer* by stating:

> > We cannot determine fairly whether $60,000 is a reasonable or excessive sum without knowing more facts about the victim's injury and his residual circumstances. These facts are necessary in order for us to determine the victim's loss and inconvenience. Necessarily relevant is defendant's ability to pay the sum ordered.

> . . . .

> *The trial court shall hold a hearing on the matter, allowing both sides to make arguments and present evidence showing the appropriate amount of restitution.* After considering and articulating all factors, the court shall determine the appropriate sum to compensate the victim for his loss and inconvenience.

*Id.* at 526 (emphasis added).

Although the above cases involved restitution ordered as a condition of probation, this distinction does not merit a different result for restitution ordered pursuant to La.Code Crim.P. art. 883.2. When restitution is ordered under either article, the record must be sufficient to review the restitution ordered. Accordingly, we grant the defendant's request for a restitution hearing by instructing the trial court to hold such hearing upon remand.

In its conclusion, this court vacated Joseph's sentences and remanded for resentencing, instructing the trial court to hold a restitution hearing for both parties to present evidence concerning the amount of restitution owed. *Id.* at 380-81. *See also State v. Danos*, 08-2085 (La.App. 1 Cir. 7/22/09), 21 So.3d 414. Therefore, here, we affirm Defendant's sentence, vacate the trial court's order of $25,000.00 in restitution, and remand this case for a restitution hearing at which both parties may present evidence concerning the amount of restitution owed.

Defendant's final argument is that the trial court erred in failing to conduct a hearing regarding his ability to pay restitution. We also find merit to this argument.

Effective August 1, 2022, shortly before Defendant's guilty plea, the legislature enacted the following version of La.Code Crim.P. art. 883.2, in pertinent part:

> D. Notwithstanding any other provision of law to the contrary, if the defendant is found to be indigent and therefore unable to make restitution in full at the time of conviction, the court may order a periodic payment plan pursuant to the provisions of Article 875.1.

Also, effective August 1, 2022, La.Code Crim.P. art. 875.1 (emphasis added)

provides:

A. The purpose of imposing financial obligations on an offender who is convicted of a criminal offense is to hold the offender accountable for his action, to compensate victims for any actual pecuniary loss or costs incurred in connection with a criminal prosecution, to defray the cost of court operations, and to provide services to offenders and victims. These financial obligations should not create a barrier to the offender's successful rehabilitation and reentry into society. Financial obligations in excess of what an offender can reasonably pay undermine the primary purpose of the justice system which is to deter criminal behavior and encourage compliance with the law. Financial obligations that cause undue hardship on the offender should be waived, modified, or forgiven. Creating a payment plan for the offender that is based upon the ability to pay, results in financial obligations that the offender is able to comply with and often results in more money collected. Offenders who are consistent in their payments and in good faith try to fulfill their financial obligations should be rewarded for their efforts.

B. For purposes of this Article, "financial obligations" shall include any fine, fee, cost, restitution, or other monetary obligation authorized by this Code or by the Louisiana Revised Statutes of 1950 and imposed upon the defendant as part of a criminal sentence, incarceration, or as a condition of the defendant's release on probation or parole.

C. (1) *Notwithstanding any provision of law to the contrary, prior to ordering the imposition or enforcement of any financial obligations as defined by this Article, the court shall conduct a hearing to determine whether payment in full of the aggregate amount of all the financial obligations to be imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents.* The court may consider, among other factors, whether any victim of the crime has incurred a substantial financial hardship as a result of the criminal act or acts and whether the defendant is employed. The court may delay the hearing to determine substantial financial hardship for a period not to exceed ninety days, in order to permit either party to submit relevant evidence.

(2) *The defendant or the court may waive the judicial determination of a substantial financial hardship required by the provisions of this Paragraph. If the court waives the hearing on its own motion, the court shall provide reasons, entered upon the record, for its determination that the defendant is capable of paying the fines, fees, and penalties imposed without causing a substantial financial hardship.*

20

D. (1) If the court determines that payment in full of the aggregate amount of all financial obligations imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents, the court shall do either of the following:

(a) Waive all or any portion of the financial obligations, except as provided in Paragraph E of this Article.

(b) Order a payment plan that requires the defendant to make a monthly payment to fulfill the financial obligations.

(2)(a) The amount of each monthly payment for the payment plan ordered pursuant to the provisions of Subsubparagraph (1)(b) of this Paragraph shall be determined by the court after considering all relevant factors, including but not limited to the defendant's average gross daily income for an eight-hour work day.

(b) If the court has ordered restitution, half of the defendant's monthly payment shall be distributed toward the defendant's restitution obligation.

(c) Except as provided in Paragraph E of this Article, during any periods of unemployment, homelessness, or other circumstances in which the defendant is unable to make the monthly payment, the court or the defendant's probation and parole officer is authorized to impose a payment alternative, including but not limited to substance abuse treatment, education, job training, or community service.

(3) If, after the initial determination of the defendant's ability to fulfill his financial obligations, the defendant's circumstances and ability to pay his financial obligations change, the State, the defendant, or the defendant's attorney may file a motion with the court to reevaluate the defendant's circumstances and determine, in the same manner as the initial determination, whether a modification of the monthly financial obligation imposed pursuant to this Article is appropriate under the circumstances.

E. Notwithstanding any other provision of this Article or any other provision of law to the contrary, a court may not waive nor forgive restitution due to a crime victim unless the victim to whom restitution is due consents to such an action.

F. If, at the termination or end of the defendant's term of supervision, any restitution ordered by the court remains outstanding, the balance of the unpaid restitution shall be reduced to a civil money judgment in favor of the person to whom restitution is owed, which may be enforced in the same manner as provided for the execution of judgments in the Code of Civil Procedure. For any civil money judgment ordered under this Article, the clerk shall send notice of the judgment to the last known address of the person to whom the restitution is ordered to be paid.

G. The provisions of this Article shall apply only to defendants convicted of offenses classified as felonies under applicable law.

H. Notwithstanding any provision of this Article or any other law to the contrary, if the financial obligations imposed upon a defendant would cause substantial financial hardship to the defendant or his dependents, the court shall not order that the defendant be incarcerated for his inability to meet those financial obligations. This provision shall apply to defendants convicted of traffic offenses, misdemeanor offenses, or felonies under applicable law.

Although Defendant committed his offense before La.Code Crim.P. art. 875.1 took effect, Article 875.1 is a procedural statute that applies to all actions subsequent to its effective date. *See State v. Brossette*, 163 La. 1035, 113 So. 366, (La.1927). In *Smith*, 315 So.3d at 422, the second circuit found that a version of La.Code Crim.P. art. 875.1 that became effective on August 1, 2019, applied to sentences imposed after that date. Thus, in addition to ordering resentencing after a hearing was held to determine the amount of restitution owed, the second circuit also ordered the trial court to determine Smith's ability to pay. Accordingly, we remand this case for a restitution hearing with instructions that the restitution hearing also comply with La.Code Crim.P. art. 875.1.

**DECREE**

Defendant's conviction is affirmed. Defendant's sentence is affirmed, in part, as to his sentence of twenty years at hard labor, and vacated, in part, as to the restitution order. This case is remanded to the trial court for a restitution hearing to allow both parties to present evidence concerning the amount of restitution owed, and for that restitution hearing to fully comply with La.Code Crim.P. art. 875.1.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED, IN PART, AND VACATED, IN PART, CASE REMANDED FOR RESTITUTION HEARING, WITH INSTRUCTIONS.**